IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-73,775






EX PARTE GABRIEL GONZALES, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN THE 144
TH JUDICIAL DISTRICT COURT, BEXAR COUNTY


CAUSE NO. 94CR5865A 





 Cochran, J., filed a concurring opinion.


O P I N I O N 



 I join the Court's opinion. I write separately only to address a matter raised by
Presiding Judge Keller in her dissenting opinion. Judge Keller states that, in Summerlin v.
Schriro, (1) "the Ninth Circuit may have suggested the same rule the Court announces in the
present case." (2) If one inverts that sentence to read, "this Court may be suggesting the same
rule the Ninth Circuit announced in Summerlin v. Schriro," I agree with her assessment. 
Although the majority in this case does not speak with the breadth of the Ninth Circuit, I
think that any capital-murder defense counsel in Texas should read Summerlin before
beginning his pretrial investigation.

 The underlying message of Summerlin is that defense counsel must fully investigate
any and all potential mitigating circumstances in his client's background which might
conceivably persuade a jury not to impose the death penalty. The failure to investigate will
not be excused simply because the defendant failed to mention such evidence himself. 
Indeed, under Rompilla v. Beard, (3) defense counsel may be required to investigate potential
mitigating facts even when the defendant is "uninterested in helping" or is "even actively
obstructive" in developing a mitigation defense. (4) 

 Under both current Supreme Court standards and Texas statutes, defense counsel has
a constitutional duty to seek out all of the "circumstances of the offense, the defendant's
character and background, and [any evidence that lessens] the personal moral culpability of
the defendant[.]" (5) At a minimum, defense counsel must privately quiz his client about any
and all positive and negative facts about the defendant's upbringing, personality, social
interactions, thoughts and feelings. It is not sufficient to inquire generally and leave it up to
the defendant to raise topics or respond to open-ended questions. Like a doctor, defense
counsel must be armed with a comprehensive check-list of possibilities, and forcefully
inquire about each topic. Such topics might include:

 * Childhood accidents and injuries;


 * Trips to the emergency room;


 * Serious illnesses at any time;


 * Physical abuse to the defendant or any other member of the family;


 * Any sexual abuse to the defendant or any other member of the family;


 * Size of the immediate family, and a history of the physical, educational, and
emotional background of each member;


 * The defendant's relationship with and attitudes toward every member of the
family;


 * Drug or alcohol use or abuse by himself and any or all members of the family;


 * Any mental health treatment of any member of the family, including the
defendant;


 * The cohesiveness of the family;


 * The family's standard of living and living conditions;


 * Any and all available school records;


 * Any record of learning disabilities;


 * Childhood and adult social relationships with members of the same and
opposite sex;


 * Any marriage, divorce, children, step-children, or surrogate family
relationships, and their positive or negative influence upon the defendant;


 * Any and all awards, honors, or special accomplishments, as well as any and all
convictions, arrests, expulsions or suspensions from school, job firings, etc.;


 * Any and all traumatic experiences;


 * Any and all especially proud moments;


 * Membership in religious, social, educational, charitable organizations;


 * The client's five best and worst memories.


 Only after a lengthy and thorough interview with his client will defense counsel be
in a position to decide which are the most promising mitigation areas to pursue. Because of
finite resources and time, capital counsel's strategic and tactical decisions regarding the
further investigation, development, and use of potential mitigating evidence should be given
great deference. But deference is not due to counsel who fails to interview his client at
sufficient length and depth to discover, as accurately as possible, the unvarnished truth about
his client. A particular defendant may be such an accomplished dissembler that he
successfully hides important information from his own attorney; in that instance, of course,
the defendant bears full responsibility for affirmatively hiding the truth. But capital counsel
bears the responsibility for at least making every reasonable attempt to uncover possible
mitigation facts from his client.

 To that extent, at least, I think that the majority would agree with the reasoning of
Summerlin, as do I.

Filed: October 18, 2006

Publish
1. 427 F.3d 623 (9
th Cir. 2005), cert. denied, 126 S.Ct. 1880 (2006).
2. Infra, slip op. at 4 (Keller, P.J., dissenting).
3. 545 U.S. 374 (2005).
4. Id. at 381; Summerlin, 427 F.3d at 638 ("'a lawyer's duty to investigate is virtually
absolute, regardless of a client's expressed wishes'") (quoting Silva v. Woodford, 279 F.3d 825,
840 (9th Cir. 2002).
5. See generally, Rompilla; Wiggins v. Smith, 539 U.S. 510 (2003); Tex. Code Crim.
Proc. art. 37.071, § 2(e)(1). Because this offense was committed, investigated, and tried
between 1994 and 1997, the current statutory mitigation issue was applicable to the punishment
phase, as was counsel's duty to investigate all facts which might be relevant to that special issue.